HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIONELIS JOSE LOPEZ CAMACHO, | CASE NO. 2:26-cv-00925-RAJ |
| Petitioner, | ORDER |
| v. | |
| ICE FIELD OFFICE DIRECTOR, | |
| Respondent. | |

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioner Dionelis Jose Lopez Camacho's Petition for Writ of Habeas Corpus, Dkt. # 3. The court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Petitioner's petition.

## II.    BACKGROUND

Petitioner is a citizen of Venezuela. Dkt. # 7 ¶ 3. On or around December 29, 2022, immigration officials encountered Petitioner near the U.S.-Mexico border and detained him. *Id.* ¶ 4. On the same day, a Notice to Appear ("NTA") was issued, charging him as inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act

ORDER – 1

("INA"). *Id.* ¶ 5. The next day, on December 30, 2022, he was released on an Order of Release on Recognizance ("OREC"). *Id.* ¶ 6. The OREC states it was issued "[i]n accordance with section 236 of the Immigration and Nationality Act [codified at 8 U.S.C. § 1226]." Dkt. # 8-3 at 3.

According to a declaration from Deportation Officer Enrique Rodriguez, Petitioner "failed to report over the course of 2023 through 2025." Dkt. # 7 ¶ 7. The Form I-213 summarizing Petitioner's arrest also references that Petitioner "violated the terms of his OREC paperwork since he failed to report on his initial office visit," although it does not say this was the reason for his arrest. Dkt. # 8-1 at 4. There are no further details regarding the alleged missed appointments in the government's submission. Petitioner disputes the government's assertions. He states he has "never missed any appointments" and "complied with all required processes, including USCIS appointments, fingerprinting, address changes, and all necessary check-ins." Dkt. # 9. It is undisputed that Petitioner has no criminal record. *See id.* ("I have no criminal record or charges such as DUI or any other offenses"); Dkt. # 8-1 at 4 ("There are no known criminal arrests or convictions against LOPEZ-CAMACHO").

On December 17, 2025, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner during "targeted enforcement operations in Portland, Oregon, focusing on individuals unlawfully present in the United States with prior immigration violations." Dkt. # 8-1 at 3. Although unclear, it appears ICE may have used false pretenses to cause Petitioner to drive to a parking lot where ICE arrested him. *See* Dkt. # 9 (letter from Petitioner stating he "was selling a car through the Marketplace," but when he drove to the address provided by an individual claiming to be an interested buyer, he "suspect[ed] that something was not right" and "[a]bout 20 seconds later, another vehicle arrived with immigration agents (ICE)"); Dkt. # 8-1 at 3 (Form I-213 stating "DHS Officers were in constant communication with LOPEZ using Open Source markets and messaging."). On the same day, ICE issued a Cancellation of Form I-220A, cancelling Petitioner's OREC.

ORDER – 2

Dkt. # 8-4 at 2. Petitioner was booked into the Northwest ICE Processing Center ("NWICP") where he remains today. Dkt. # 7 ¶ 8.

On February 11, 2026, Petitioner appeared for a bond hearing. Dkt. # 8-5 at 2. The immigration judge ("IJ") denied bond, finding there was no jurisdiction because Petitioner was subject to mandatory detention. *Id.* No alternative finding was made. *Id.* Petitioner requested reconsideration of the bond determination, and on March 18, 2026, an IJ held a new bond hearing. Dkt. # 7 ¶ 11. The IJ again denied bond based on a finding of no jurisdiction due to mandatory detention, with no alternative findings. Dkt. # 8-6 at 2. Petitioner reserved his right to appeal, although the government represents that at the time it filed its return memorandum, Petitioner had not appealed the bond denial. Dkt. # 7 ¶ 11.

On March 25, 2026, an IJ entered an order of removal to Venezuela and denied Petitioner's application for asylum and withholding of removal. *Id.* ¶ 12. Petitioner appealed the decision on or around April 13, 2026. Dkt. # 11 at 1. The government filed a status report indicating that as of April 29, 2026, "ICE has not yet received a notice of receipt or rejection regarding Petitioner's appeal from the BIA." Dkt. # 11 at 2.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV. DISCUSSION

### A. Bruce Scott is Added as an Additional Respondent

Petitioner, proceeding *pro se*, listed "ICE Field Office Director" as the sole respondent in this case. Dkt. # 4. The government does not challenge the designated

ORDER – 3

respondent. *See generally* Dkt. # 7. The proper respondent for a § 2241 habeas petition, however, is the warden of the facility where the petitioner is detained. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024) ("*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition"). Naming the appropriate respondent has jurisdictional implications. *See id.* at 1194–95 (finding "failure to name the Facility Administrator renders the district court's exercise of jurisdiction erroneous."). Accordingly, in light of the Court's obligation to construe *pro se* filings leniently, the Court will direct the clerk to add Bruce Scott, Warden of NWIPC, as a respondent in this case. *See Alejo Amezcua v. Scott*, No. 26-cv-820, 2026 WL 1004610, at *1 n.1. (W.D. Wash. Apr. 14, 2026) ("Consistent with its obligation to construe pro se filings leniently, the Court substitutes NWIPC Warden Bruce Scott as the respondent in this matter."); *Triminio Martinez v. ICE Field Office Director*, No. 26-cv-748, 2026 WL 925625, at *1 n.1 (W.D. Wash. Apr. 4, 2026) (in *pro se* case, directing clerk to name Bruce Scott as a respondent).

### B.    Petitioner is detained pursuant to 8 U.S.C. § 1226(a).

The government argues Petitioner "is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2) and is subject to mandatory detention while his removal proceedings remain pending." Dkt. # 6 at 4. Construing Petitioner's petition liberally, he argues that he is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention. *See* Dkt. # 3 at 3–4 (noting "custody has changed . . . to 1226(a)" and "the Agency no longer had mandatory detention of the [noncitizen], but has the authority to order release on bond or upon conditions."). The Court finds Petitioner is detained under 8 U.S.C. § 1226(a).

Section 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission are subject to mandatory detention and may only be released on parole "for urgent humanitarian reasons

ORDER – 4

or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Courts in this District have repeatedly rejected the government's position and have instead consistently concluded that petitioners who are released on an OREC and subsequently re-detained are subject to Section 1226(a), not Section 1225(b). *See, e.g.*, *Rana v. Bondi*, No. 26-cv-244, 2026 WL 472800, at *3 (W.D. Wash. Feb. 19, 2026). This includes petitioners who, as here, appear to have been "apprehended upon arrival" prior to their initial release on recognizance. *See Del Valle Castillo v. Wamsley*, No. 25-cv-2054, 2025 WL 3524932, at *7, (W.D. Wash. Nov. 26, 2025) (citation omitted) (determining that petitioner, who had been apprehended on arrival, released on an OREC, and later re-detained, was subject to discretionary detention under § 1226(a)); *Diaz-Aguero v. Noem*, No. 26-cv-00637, 2026 WL 915053, at *2 (W.D. Wash. Apr. 3, 2026) (same). The key question applicable to a petitioner apprehended upon arrival turns on "the government's treatment" of the petitioner: "where a petitioner has been 'treated by [the government] as subject to discretionary detention under section 1226,' rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo*, 2025 WL 3524932, at *5 (quoting *Romero v. Hyde*, No. 25-cv-11631, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)).

Here, the record demonstrates that Petitioner is subject to detention under Section 1226(a). Petitioner was released on an OREC, rather than humanitarian parole, in December 2022, and the OREC specifically provides that Petitioner's release was "[i]n accordance with" 8 U.SC. § 1226. Dkt. # 5-3. This language underscores the government's treatment of Petitioner as subject to Section 1226(a) rather than Section 1225(b). *See, e.g.*, *Aguilar-Graterol v. Warden/Facility Administrator, Nw. Det. Ctr.*, No. 26-cv-00997, 2026 WL 1162705, at *4 (W.D. Wash. Apr. 29, 2026) (OREC specifying that petitioner's release was "pursuant to 'section 236 of the Immigration and Nationality Act'" indicated government's treatment of petitioner as "subject to discretionary detention

ORDER – 5

under 8 U.S.C. § 1226 from his arrival in the United States until [his subsequent re-detention]"); *Soto v. Bondi*, No. 26-cv-652, 2026 WL 972731, at *5 (W.D. Wash. Apr. 10, 2026) (same); *Fiston v. Bondi*, No. 26-cv-904, 2026 WL 926064, at *3 (W.D. Wash. Apr. 6, 2026) (noting that presence of this language made petitioner's case "even stronger").

The government relies on *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) in support of its position.  Dkt. # 6 at 5.  However, *Buenrostro-Mendez*, an out-of-circuit opinion, is not binding and courts in this District have declined to adopt its holding. *See, e.g.*, *Barrios Osorio v. Bondi*, No. 26-cv-317, 2026 WL 607765, at *2 (W.D. Wash. Mar. 4, 2026) (finding government's reliance on *Buenrostro-Mendez* unpersuasive).

The Court accordingly concludes that Petitioner's detention is governed by Section 1226(a), not Section 1225(b).  Even if Petitioner were detained under Section 1225(b), however, Respondents' statutory authority cannot replace the constitutional requirement of procedural due process.  *See P.T. v. Hermosillo*, No. 25-cv-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Tarbakhov v. Warden of Nw. Det. Ctr.*, No. 26-279, 2026 WL 653705, at *3 (W.D. Wash. Mar. 9, 2025) (rejecting argument that petitioner is subject to mandatory detention under § 1225(b) because "[r]egardless of the reason for Petitioner's detention, the Government remains subject to an obligation to 'effectuate [his] detention in a manner that comports with due process.'") (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)).  As such, the Court finds in the alternative that "the due process requirements articulated in this order apply regardless of whether [Petitioner] is detained under Section 1225(b) or 1226(a)."  *Herrera Gomez v. Wamsley*, No. 25-cv-2642, 2026 WL 279966, at *3 (W.D. Wash. Feb. 3, 2026) (citing *Flores Torres v. Hermosillo*, No. 25-cv-02687, 2026 WL 145715, at *2, 7–8 (W.D. Wash. Jan. 20, 2026)).

ORDER – 6

### C.    *Banda* is Inapplicable

The government next argues Petitioner's detention has not become unconstitutionally prolonged under *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019). Dkt. # 6 at 5–9. "*Banda* provides a set of criteria courts in this Circuit use in determining whether a noncitizen who is detained pursuant to 8 U.S.C. § 1225(b), and who has never been provided a hearing at which the Section 1226(a) factors are considered, is entitled to such a hearing." *K.G.M.Q. v. Bondi*, No. 26-cv-506, 2026 WL 962609, at *9 (W.D. Wash. Apr. 9, 2026); *see Banda*, 385 F. Supp. 3d at 1118 ("the Court adopts the multi-factor test that many other courts have relied upon to determine whether § 1225(b) detention has become unreasonable."). *Banda* is not applicable here because Petitioner is not detained under § 1225(b) and has received bond hearings. *See K.G.M.Q.*, 2026 WL 962609, at *9 (finding "*Banda* also does not apply, and the Court need not conduct a *Banda* analysis" because "Petitioner is not detained under Section 1225(b)" and "Petitioner had a bond hearing").

### D.    Petitioner Need Not Exhaust Administrative Remedies

Next, the government argues Petitioner "failed to exhaust his administrative remedies with respect to his request for a bond hearing" and should be required to "appeal that ruling to the BIA before seeking habeas relief in this Court." Dkt. # 6 at 9. The Court does not find exhaustion of administrative remedies is necessary in this case.

On habeas review under 28 U.S.C. § 2241, "[t]he exhaustion requirement is prudential, rather than jurisdictional[.]" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). In the Ninth Circuit, courts may require prudential exhaustion when: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). However, even in cases where all three *Puga*

ORDER – 7

factors favor prudential exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

The *Puga* factors do not weigh in favor of requiring administrative exhaustion.  As to the first *Puga* factor, "an administrative appellate record is not necessary to resolve . . . purely legal questions."  *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. Apr. 24, 2025) (quoting *Hernandez*, 872 F.3d at 989)).  The question of whether Petitioner is subject to mandatory detention is a purely legal question.  *See Barrios Osorio*, 2026 WL 607765, *3 ("The question presented is purely legal in nature—which detention statute applies to a noncitizen arrested inside the country.").  Accordingly, the first factor weighs against administrative exhaustion.

As to the second *Puga* factor, the *Rodriguez* court, in considering a similar legal question regarding mandatory detention, found that "rather than encouraging other detainees to bypass the administrative process, adjudicating [the petitioner's] case may answer a recurring legal question and thus reduce the number of future habeas petitioners."  *Rodriguez*, 779 F. Supp. 3d at 1252.  Although this case is not a class action like *Rodriguez*, declining to require administrative exhaustion here will likewise answer a recurring legal question.  In addition, the second *Puga* factor also weighs against requiring administrative exhaustion where the petitioner "has diligently pursued administrative remedies, but the process has proven incapable of timely resolving his claims while his liberty is at stake."  *Scott v. Wamsley*, No. 25-cv-1819, 2025 WL 3514304, at *3 (W.D. Wash. Dec. 8, 2025).  Here, while the record is incomplete, it appears the Petitioner is attempting to pursue his administrative remedies.  After his initial bond hearing, he requested a reconsideration of the bond determination, and after his second bond hearing, he reserved his right to appeal.

ORDER – 8

Dkt. # 7 ¶ 11.   Accordingly, the second factor also weighs against administrative exhaustion.

As to the third *Puga* factor, "[w]hen the agency's position on the 'question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." *Scott*, 2025 WL 3514304, at *4 (quoting *Hernandez*, 872 F.3d at 989).  There is insufficient evidence in the record for the Court to conclude the agency's position "appears already set," although the Court observes "the challenged practice of the Tacoma IJs has continued." *Rodriguez*, 779 F. Supp. 3d at 1252 (considering two unpublished BIA decisions reversing similar mandatory detention orders and finding the third *Puga* factor is neutral).  Regardless, the Court finds that even if the agency corrects its own mistake, that would not necessarily preclude the need for judicial review in this case because the Petitioner raises a constitutional challenge to his detention.  Accordingly, the third factor also weighs against administrative exhaustion.

In the alternative, even if the *Puga* factors weighed in favor of administrative exhaustion, the Court would waive the requirement because requiring Petitioner to appeal the bond determination would result in irreparable harm.  "The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention." *Id.* at 1253 (quoting *Hernandez*, 872 F.3d at 995).  According to data released by the Executive Office for Immigration Review, the average processing time for bond appeals in 2024 exceeded 200 days. *Id.* at 1248– 49.  District courts in this Circuit "routinely" waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals. *Id.* at 1253–54 (collecting cases); *see Scott*, 2025 WL 3514304, at *4 (waiving administrative exhaustion based on irreparable harm).  Requiring Petitioner to remain in detention, potentially for many months, to appeal an IJ determination that has been routinely and consistently rejected in this district would result in irreparable harm.

ORDER – 9

### E.   The IJ's Determination Does Not Provide a Lawful Basis For Detention

"Although federal courts generally lack jurisdiction to review discretionary bond determinations, *see* 8 U.S.C. § 1226(e), Section 1226(e) does not preclude judicial review of constitutional claims or questions of law." *K.G.M.Q.*, 2026 WL 962609, at *10. "A district court has jurisdiction to review an immigration judge's denial of bond when the bond denial is legally erroneous or unconstitutional." *Id.* Here, at both of Petitioner's bond hearings, the IJ determined there was no jurisdiction because Petitioner is subject to mandatory detention, and made no alternative findings. Dkt. # 8-5 at 2; Dkt. # 8-6 at 2. As discussed above, Petitioner is detained pursuant to Section 1226(a) and is not subject to mandatory detention. Accordingly, the bond hearing determinations were erroneous and do not provide a lawful basis for detention. *See K.G.M.Q.*, 2026 WL 962609, at *10 ("The IJ's determination that it lacked jurisdiction to order bond under Section 1225 was legally erroneous . . . This erroneous finding does not provide a lawful basis for Petitioner's detention."); *see also Barrios Osorio*, 2026 WL 607765, at *3 ("the immigration judge's main ruling—that the court lacked jurisdiction under Section 1225—was legally erroneous for the reasons detailed above.").

### F.   Petitioner's Detention Violates Procedural Due Process

Having resolved the government's arguments for denying the petition, the Court turns to the Petitioner's arguments. Petitioner asks the Court to "issue an order commanding his release from the custody of ICE due to the fact that such custody violates the due process rights of Petitioner." Dkt. # 3 at 1. He additionally submitted a letter describing the circumstances of his arrest without notice and an opportunity to be heard. Dkt. # 9. Construing Petitioner's *pro se* petition liberally, the Court will analyze Petitioner's claim under the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The government's return did not address Petitioner's detention under the *Mathews* test. It only analyzed his detention under *Banda*, which, as discussed above, is inapplicable here.

ORDER – 10

The Fifth Amendment of the U.S. Constitution forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35.

Due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the three-part test set forth in *Mathews* applies in the immigration detention context. *Id.* at 1207. District courts have subsequently applied the *Mathews* test in that context, including in circumstances similar to this case. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–24 & 1321 n.4 (collecting cases and applying *Mathews* test to noncitizen released on recognizance and re-detained without prior notice and hearing).

### i.    Petitioner has a protected interest in his liberty.

With respect to the first *Mathews* factor, the "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects."). "The Supreme Court has

ORDER – 11

repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).

In this case, when Petitioner was released on his recognizance in December of 2022, he "took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025) (citing *Doe*, 787 F.Supp.3d at 1093). During the nearly three years Petitioner was on release, he lived in the community without incident, and provided for his family, including two young children. *See* Dkt. # 8-1 at 4 (Form I-213 noting Petitioner has no known criminal arrests or convictions); Dkt. # 9 at 1 ("I am the head of my household and the sole provider for my family. I have two young children, ages 5 and 3, and a wife who depend entirely on me."). In reliance on his liberty interest, Petitioner applied for asylum and other immigration relief. *See* Dkt. # 7 ¶ 12; *Caisa Telenchana v. Hermosillo*, No. 26-cv-00363, 2026 WL 696806, at *2–4, 9 (W.D. Wash. Mar. 12, 2026) (petitioners released on ORECs, including several who had applied for asylum and/or obtained work permits while on release, had "established liberty interests in the months and years they were permitted to live in the United States"). The first *Mathews* factor therefore weighs in favor of Petitioner.

### ii.   The risk of erroneous deprivation of liberty is high.

With respect to the second *Mathews* factor, the risk of erroneous deprivation of liberty is high. Petitioner was released on an OREC and lived in the community for nearly three years without incident. *See* Dkt. # 7 ¶ 6; Dkt. # 8-1 at 4; Dkt. # 9. As described above, he was arrested without notice and an opportunity to be heard, and possibly after ICE agents led him to the place of his arrest under false pretenses. *See* Dkt. # 9; Dkt. # 8-1 at 3. Based on the available record, there was no obvious precipitating event leading to Petitioner's arrest. Rather, the arrest was part of a "targeted enforcement operations in Portland, Oregon, focusing on individuals unlawfully present in the United States with

ORDER – 12

prior immigration violations." Dkt. # 8-1 at 3.  There is no indication that there was any individualized assessment of Petitioner's flight risk or dangerousness prior to his arrest. Under these circumstances, the lack of procedures used prior to Petitioner's detention creates a high risk of erroneous deprivation of liberty.  *See E.A. T.-B.*, 795 F. Supp. 3d at 1323 ("ICE's initial decision to release Petitioner was based on a consideration of the danger that Petitioner posed to the community and the likelihood that he would appear for future hearings . . . arresting and re-detaining him at this point without first reconsidering those factors poses a significant risk of an erroneous deprivation of Petitioner's liberty interest in continued release."); *Randhawa v. Noem*, No. 26-461, 2026 WL 628299, at *2 (W.D. Wash. Mar. 6, 2026) (finding high risk of erroneous deprivation where respondents "having earlier released [petitioner] because he was not a flight risk or a danger to the community, re-detained him without considering these factors" and the circumstances of his ATD violation); *Sarwari v. Wamsley*, No. 26-cv-121, 2026 WL 279968, at *6 (W.D. Wash. Feb. 3, 2026) ("where Petitioner has been released upon findings . . . that he did not pose a flight risk or a danger . . . and where it is undisputed that he was arrested with no notice of the reasons for his arrest, the risk of erroneous deprivation is high.").

The government may claim Petitioner was arrested due to missed appointments, but on the present record, this does not justify Petitioner's detention without notice and an opportunity to be heard.  Significantly, Petitioner disputes that he missed any required appointments, and there is very little in the record to corroborate the government's claim. Dkt. # 9; Dkt. # 7 ¶ 7; Dkt. # 8-1 at 3.  The government's sole evidence is the declaration of a deportation officer stating Petitioner "failed to report over the course of 2023 through 2025" and a Form I-213 reference to the fact that Petitioner "failed to report on his initial office visit."   Dkt. # 7 ¶ 7; Dkt. # 8-1 at 3.  No detail is provided about the dates of the purported missed appointments, where Petitioner was supposed to report, or even how many appointments Petitioner purportedly missed.  There is no primary evidence of the missed appointments. Without more corroborating detail, the alleged missed appointments

ORDER – 13

do not justify detention without notice and an opportunity to be heard. *See Sarwari*, 2026 WL 279968, at * 5 ("If Respondents wished Petitioner's alleged ATD [Alternatives to Detention] violations to be considered, they could and should have provided them to the Court"). More fundamentally, as courts throughout this District and Circuit have repeatedly found, "a petitioner who misses an appointment or hearing is nonetheless entitled to a pre-deprivation hearing." *E.G.M. v. Scott*, No. C26-0744-KKE, 2026 WL 914803, at *5 (W.D. Wash. Apr. 3, 2026) (collecting cases). In other words, "[u]ltimately, even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his [release order] violations," it does not follow that "Petitioner can be detained for those violations without a hearing." *E.A. T.-B.*, 795 F. Supp. 3d at 1322. Therefore, the second *Mathews* factor favors Petitioner.

### iii.    Respondents' interest in re-detaining Petitioner without due process is minimal.

As to the third *Mathews* factor, "the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on ATD violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *Id.* at 1324. Indeed, "[t]he fact that Respondents have not even alleged that Petitioner poses a flight right or represents a danger to any person undermines any suggestion that Respondents' interests must be satisfied immediately." *Sarwari*, 2026 WL 279968, at *6.

Accordingly, the third *Mathews* factor, like the first two, weigh in Petitioner's favor. Because all three *Mathews* factors favor Petitioner, the Court concludes that Respondents' re-detention of Petitioner and revocation of his OREC violated his procedural due process rights.

ORDER – 14

**G.    Remedy**

Having determined that Petitioner was re-detained without due process, the Court must impose the appropriate remedy.  Petitioner seeks release or a bond hearing.  Dkt. # 3 at 2.  The government's return simply seeks denial of the habeas petition and does not address the scope of relief if the petition is granted.  *See* Dkt. # 6.

The Court finds that release is the appropriate remedy.  Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q.*, 2026 WL 962609, at *12; *Kirykovich v. Hernandez*, 26-cv-695, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante— that is, to return [the petitioner] to the conditions that existed before his unlawful detention.") (emphasis in original).  As other courts in this District and Circuit have found, post-detention bond hearing would be an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty. *E.A. T.-B.*, 795 F.Supp.3d at 1324 **(**quoting *Domingo v. Kaiser*, No. 25-cv-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  Ordering a hearing while the petitioner remains detained "would not adequately vindicate his rights; it would reward the government for detaining first and asking questions later." *Kirykovich*, 2026 WL 890459, at *4.  Accordingly, the Court concludes that the appropriate remedy in this case is immediate release.

//

//

//

ORDER – 15

## V.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner Dionelis Jose Lopez Camacho's Petition for Writ of Habeas Corpus.  Dkt. # 3.  The Court **ORDERS** that Respondents:

(1)    Shall immediately release Petitioner from custody under the terms of his preexisting Order of Release on Recognizance; and

(2)    Shall file with the Court a notice within two (2) business days confirming his release.

The clerk is directed to add Bruce Scott, Warden of Northwest ICE Processing Center, as a respondent in this case.

DATED this 6th day of May, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 16